Good morning. My name is Judith Johnson, and I represent the appellants Rich and Craig Storek, who are trustees of the Wenzel C. Storek Trust in this case. The appellee is Fidelity Insurance. Fidelity issued a policy of insurance, there's no question but that my clients paid for the policy and that the policy was in effect during the time in question. What was before the court below and is before you here is whether Fidelity owed a duty to defend my clients against a cross-complaint and also whether Fidelity's actions in denying coverage amounted to bad faith. The court below ruled there was no duty to defend, and therefore there could not have been bad faith. We believe that the court below did not correctly apply the principles of California law, and that's why we are here today. California law is liberal toward insureds such as my clients. Insureds need to show only that a cause of action could have been alleged in a complaint. Conversely, an insurance company to defeat coverage must show that by no conceivable way could a covered claim be alleged. You know, although there's really broad language in the California cases, we're bound, I think, by Upper Deck and its analysis of the California case law. And when I looked at Upper Deck, it says that in order to determine if the duty to defend is triggered, we look at whether the complaint alleges the kind of risk of injury covered by the policy. And so here, the policy would cover eviction and slander. That would be the kind of risk of injury. And then it asks us to look at whether the complaint can be construed as seeking recovery for that kind of risk based on the facts already pled. So I was having trouble seeing where in the complaint there were facts already pled, you know, even if we interpret them in light of extrinsic evidence, that would show the kind of risk of injury that was covered by the policy of eviction and slander coverage. Can you point me to what is the language where the facts are already pled in the complaint? Yes, I can. First, the prayer itself asks for general damages as well as compensatory damages. In paragraph 10. Wait a second. Let me just stop there. If the prayer for relief asks for compensatory damages, which they do in virtually every claim short of an injunction, there would be no end to what could be covered by a potential insurance policy. I mean, that doesn't cabin anything, I don't think. Well, in Upper Deck, the only thing that was requested was economic damages. That was not the case in our complaint. In our complaint, Glenn Storick, the complainant below, complained about emotional distress as well as financial distress. And those are the kinds of damages. I see the damages, but the injury, I mean, that's the language that Upper Deck uses in quoting the California or synthesizing the California cases. And so we're talking about the risk of injury. So you have property damage, bodily injury, economic damage, but here the injury, the specific injury covered by the policy was this personal injury, eviction and slander, as opposed to the sorts of things in the cross-complaint that didn't seem to be the same kind of injury. Well, in the cross-complaint, he does complain that my clients took exclusive control of the assets of the trust. The main asset is the building, the Storick building. He complains about that. He complains that my clients inserted themselves wrongfully in his relationship with his mother, the result of which was to require him and him alone to take over the expenses of the Storick building. Now, you have in the blue brief, you go through what you think are the facts. You say the potential for coverage was spelled out to the insurer in a letter to Fidelity on April 10th, and you talk about sort of implicit inferences that could be drawn from the complaint. And that's what you're referring to now. And is that the only thing that you think that would support, that would be facts in the complaint that would support construing the complaint as covering the eviction and slander causes of action? Are you asking me if I think there could be other types of damages covered? Is there any other way that we can construe the complaint as covering or as raising a risk of eviction and slander injuries, which is what's covered by the policy? In the complaint itself, I think the allegations of breach of fiduciary duty certainly do embrace the kinds of damages that are covered by the policy. There have been numerous other cases where the breach of fiduciary duties has been construed to cover similar allegations. The one that comes to mind where the allegation was that the individuals who took over a business had made mistakes that were going to be disastrous to the business, those allegations were deemed enough to cause the insurance company to have a duty to defend under a very different policy, a CGL policy with personal injury coverage for defamation. So your theory is that an allegation of breach of fiduciary duty is a form of personal injury, and therefore the forms of personal injury in the case are not covered by the policy? I am saying that the facts that underlie the allegations are what we look at. And the facts underlying the allegations in, I would say, in both the breach of fiduciary duty cause of action and also in the interference cause of action, where Glenn Sturek talks about my clients inserting themselves wrongfully in his relationship with his mother. And, you know, as I think, Judge Walter, you had a question? I want to ask you, the cross-claim defendants, do you consider them to be insured also under this policy? Yes, they are insured under the policy because they are trustees of the trust. So are they a third party? No, they are not a third party. Then I have a problem just looking at it. Is this the type of policy that anticipates a ‑‑ I would read it as insurance against claims by third parties, not co‑insurers, insurers. There are many policies, of course, where co‑insurers, where there is an exclusion against suits by co‑insurers. That was the first thing I looked at. I agree with you. That was my very first question. When I was looking at the policy to see if I was going to make a claim or send a tender to the insurance company, is there an exclusion against complaints by co‑insurers? There is not. The same thing was true in the Barnett case. It was a very similar situation where the individuals had all been part of a medical group, and one sued the other. I mean, one sued several of the others. So it was a very similar situation, but I certainly am right with you, and that was my first question. I'd like to just go ahead and say that not only does the court need to look at what is alleged in the complaint itself, but the insurer's attention by way of extrinsic evidence. That is the very clear law of the state of California, which is different from the law of other states. And I know Judge Walter, I read a decision by yours that was decided under Wisconsin law, for example, where they do not take into account what was submitted by you in the Upper Deck decision as well. You looked at where, what was submitted with a tender. In Upper Deck, there were two tenders. One was simply a tender of the complaint. The other, three years later, was a tender of several articles about the effect of trading cards on teenagers. The Upper Deck case was brought under WECO. The coverage was only for bodily injury. There was no allegation of bodily injury in the complaint, nor did the extrinsic evidence show any evidence of bodily injury by the plaintiffs. Let me go back to my problem with the insured suing each other. All right. The appellant says that there's an exclusion, you, which says that we don't cover personal injury caused by, or an offense committed by, or at the direction of the insured with the knowledge that the rights of others would be violated and that injury or damage would result. Why doesn't that exclusion apply? Because there is no evidence that there was any deliberate act by my clients. In fact, when they're all in the e-mail saying he's a crook, mom, he's awful, he's done all this. I mean, surely anybody, a non-lawyer would know that, wait a minute, that's liable to cause some damage around here. Well, I mean, there's certainly the law that says most offenses that are covered under personal injury are the types of offenses that do require some degree of knowledge, and you can't have an exclusion that overrides the promise of insurance. I realize that I have very little time left. I have so much more to say. And I just urge you, please, to consider all the extrinsic evidence that we showed, where we showed that it was Glenn himself who was complaining about the very types of damages, the very types of claims that are covered in our policy. And I would like to reserve the remaining time I have for rebuttal. Thank you. Good morning, Your Honors. Mark Derowetsky of Morrison & Hansel Holden Asuncion Pro, appearing on behalf of the defendant and the respondent, Fidelity Insurance. You assert in your brief that the policy calls or provides our duty to defend against claims by third parties. I read the insurance contract that I had yesterday. I didn't see anything about third parties. I think you can read the policy the way you are reading it, Your Honor. Well, I think you can, but then are we looking at an ambiguity? I mean, tell me. Well, if we're looking at an ambiguity, then we get past that issue and get to the heart of what we've been arguing about all along. I think that your point is well taken about Exclusion U. I think that the allegations that the appellant would like to read into the complaint are allegations of willful and intentional conduct. And the reason why Exclusion U is not asserted sooner in the case is because those allegations are not in the complaint. Those allegations appear nowhere except in materials that are completely extrinsic to everything. And in order for an insurance company to be able to assert the appropriate exclusions, you have to have some allegations. We believe that the extrinsic evidence rule is divine precisely so that you can add some texture to the allegations. So the question I have really relates to the exclusion from the property. Why, with the evidence that, I guess it was Glenn, was excluded according to his declaration and the locks were changed and he was basically locked out of the property, why wouldn't that be covered under the clear definition of the policy? Well, Your Honor, I think the simple answer to that is if there were an allegation in the complaint that went to that issue, there might be coverage under the policy. We'd have to see what the allegation was. The problem we have in this case is that the complaint filed against the insured alleges only certain economic claims, business losses, and things of that nature. There is no cause of action alleged in the complaint that would fall within the coverage of the policy. What California law says about extrinsic evidence is the insurer must look at extrinsic evidence in the light of what's alleged in the complaint to see whether a claim alleged in the complaint is covered by the policy. And what the Montrose decision said, the California Supreme Court, it says at page 295, the determination of whether the insurer owes a duty to defend usually is made in the first instance by comparing the allegations of the complaint with the terms of the policy. Facts extrinsic to the complaint also give rise to the duty to defend when they reveal a possibility that the claim may be covered by the terms of the policy. You've been provided with many citations to cases, some of which stand for the proposition that if there is an allegation in the complaint of a cause of action that would fall within coverage if the appropriate facts had been alleged, but had not been alleged, and extrinsic evidence showing those facts come to light, then there's coverage. An example of such a case is the Horace Mann v. Barbara B. case. In that case, the allegations of the complaint were both for intentional misconduct, sexual molestation, and negligence. The insurer denied on the basis that the facts alleged in the complaint could all be construed as intentional. In summary judgment, or at some point during the litigation... I think, I'll let the appellant be clear, but I think they are suggesting that the defamation may be covered under that rubric in the complaint about having potentially exerted influence over the mother, and that that, in effect, is broad enough to include allegations of, you know, misdealing, coercion, that sort of thing, that would be defamation. What is your response to that characterization? Well, there is no allegation in the complaint that the cross-complainant, Glenn, made a statement of a defamatory nature and communicated it to others. What they are saying is you can imply that that is sort of the flavor of what was going on. And the cases, again, in California are pretty clear that you cannot simply imply allegations that aren't there in order to get around the lack of coverage. You have to have an actual allegation. If there were an allegation, for example, in the, I believe it was in the Centillium case, which was cited in the papers, there was an allegation in the complaint that there was damage caused to third-party property, but there was no claim for property damage in the complaint. You can seek coverage and get a duty to defend based on an allegation that if read properly. Would give rise to a claim if you had made that claim, because the fact is already in the complaint. The facts need to be, one of two things have to happen for there to be coverage. There either has to be facts in the complaint, which even though they have not been pled as a covered cause of action, could be, which doesn't happen here, or there has to be a covered cause of action pled, but no facts to support it. Then you can bring in extrinsic facts. What the appellant is attempting to do here is bring extrinsic facts into a cause of action that's not covered and then say, oh, now I've gotten the extrinsic facts into the case, now I can from there take the next leap to a covered cause of action. The case is used the word stated or alleged cause, so the question is how much leeway one gives or a rope one gives to a stated cause of action. That's what it boils down to, doesn't it? Well, I think the answer is that you need to either have stated the cause or be able to state it based on the facts of the complaint. And if you read the complaint, any fair reading of the complaint, there is no cause of action covered under the policy that's stated in the complaint. What they're alleging that the two trustees did is they locked them out and locked them out and they defamed. Again, looking at the policy, it says that you're insured if you're acting as a trustee, right? Then I get to the question of surely the lockout and the defamation aren't part of the duties of the trustees, are they? I would say they're not. So they're not insured? I think that's a fair reading of the policy. So there's no duty to defend? I would agree with you. I think that's a fair reading of the policy, and I understand the trouble you're having, Your Honor, with this case. It's a dispute, it's a family dispute that one family member is trying to get coverage under the same family member's insurance so they don't have to go out of pocket. There's an essential problem with the whole thing, but, you know, that's an emotional reaction. You have to look at the actual facts and the allegations. But again, you look at the actual facts and the allegations, and let's broaden them to defamation and locking them out, whether he did or didn't. That just doesn't seem to fall within the purview of the protection of the trustees. That's what I would agree with you, Your Honor, trustees should not be engaging in that conduct as trustees, that's not trustee conduct. And it falls, I think, you know, conduct that might support a claim for breach of fiduciary duty. The U-exclusion? Yeah, but it's not going to be covered under the policy. That's the problem. I'll touch briefly on bad faith and punitive damages. The court is, of course, on summary judgment looking at this matter de novo. And in the papers below, we argued not only that there's no bad faith because there's no breach of the contract, but also based on what's known as the genuine dispute doctrine, there seems to me to be an actual and genuine dispute about coverage in this case that could very easily go either way, and all the insurance company needs is to have taken a reasonable position to prevail on breach of the implied covenant of good faith and fair dealing. Although the insurance company repeatedly denied the tender after it was asked again and again, it did sit down with the insured, it did look at all the additional information, it did fairly consider everything that was presented to it, it did not simply say on the first blush, no, we're done, I think the conduct was reasonable all along, and that is reflected in the record. And also, I don't believe there's any basis for punitive damages in this case. Punitive damages under California law require despicable conduct, and there's nothing that even rises to that level in this case. So unless there are any further questions. I want to first address your question, Judge Walter, about can lockout and defamation be duties of trustees. In this case, the evidence shows that the locks were changed because there was a break-in in the building, and I would submit that trustees certainly can change the locks when there's been a break-in. Here also there is evidence that Glenn himself had taken documents wrongfully out of the building to try to hide his own malfeasance, and my clients in the e-mails show that they did remove the records to a secure place. They did not allow Glenn anymore to come in by himself to that area of the building. They said, we will meet with you there, we will show you, we will go over the records with you. So there are other duties of them acting as trustees. They also were seeking to protect the life beneficiary, their mother, who at the time that these ---- Wasn't there evidence that Glenn would pick up the key at some office or another any time he wanted to? Absolutely. Glenn refused to come into the building. After 2005, he would not face his mother. His mother worked in the building every day, even though she was over 90. She does that to this day. He has the ability to go into the building during business hours. When I deposed him, I asked him, are you contending that they have locked you out of the building? He said, I'm not saying they did it deliberately, I think he knew it was because of the break-in back in 2005. I asked him, don't you know you can go in the building any time during business hours? He said, yes. I asked him, have you gone in during business hours? He said, no. So the acts that my clients took cannot be construed as something that is outside the realm of trustees acting to protect the interests of their elderly mother. By accusing their brother of having stolen money from her, they were certainly acting as trustees. I submit that the actions of fidelity were wrong. They can amount to bad faith in this case. No matter what evidence we showed that over and over again, evidence that spelled out that yes, Glenn is complaining about the very kinds of conduct that are covered, they stumbled us to the end, greatly to my client's detriment. Thank you very much.
judges: McKeown, Ikuta, Walter